**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **No. 21-cr-131-01 (PLF)** |
| **JASON GERDING** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

<u>**JASON GERDING'S MEMORANDUM IN AID OF SENTENCING**</u>

Jason Gerding hereby submits the following memorandum in aid of sentencing in this matter.  Mr. Gerding respectfully requests that this Honorable Court follow the recommendation of U.S. Probation and sentence him to a period of probation. Given that Mr. Gerding has been under supervision for over two years without a single violation, counsel recommends one year of probation.

## Introduction

Mr. Gerding is a fifty-two year old man who resides in Quincy, Illinois.  He was one of the first charged for the events on January 6, having been arrested merely two weeks later.  He has a minimal criminal record and has been entirely compliant with his pretrial release conditions.  He is gainfully employed as a Systems Analyst in information technology and has been since November 2021.

Mr. Gerding's arrest was one of the first after January 6th and it was widely publicized in his hometown and nationally.  He was fired shortly thereafter as a result.  Despite diligent efforts to find work and despite working in the computer field, he remained unemployed for ten months.  His family of four struggled

mightily during that period but it allowed him a period to reflect on his actions. This was important because Mr. Gerding was one of the few individuals who could claim, as a matter of fact, that he was allowed into the building.  Video from his GoPro shows that he was part of a group that was chanting "Let us in" in front of a closed door.  The doors then open and law enforcement officers are seen stepping aside.  Ms. Gerding can be heard stating, "They're letting us in?" to which Mr. Gerding responded "Yes." The two walk in thanking officers as they passed.

Mr. Gerding pleaded guilty anyway because he recognizes that he was still part of a shameful day in American history.  He knew that he heard alarms before entering the building and that the sheer volume of individuals present at the Capitol made the officers' situation impossible.  He unequivocally accepts responsibility for his crime for being somewhere he was not allowed to be.  It is noteworthy that he accepted responsibility for Parading but was fired and has been publicly shamed for treason and sedition.

In reality, Mr. Gerding was among the least culpable people on January 6th, compared to the others and should be sentenced accordingly.  The Gerdings spent about eleven minutes inside the building before leaving.  The couple never left each other's side, demonstrating that their intent was to be peaceful protestors and not violent insurrectionists.  Mr. Gerding did not bring anything remotely resembling a weapon or defensive armor that day.

Crucially, Mr. Gerding recognizes the mistake that he made by entering Capitol grounds on January 6th.  He understands that the law enforcement officials

2

whom he deeply respects were unable to distinguish between those like him, who intended no harm and other violent insurrectionists.  Mr. Gerding's conduct, which was captured by his GoPro video, demonstrates that he was one of the individuals who was caught up in the energy of the crowd.  He and his wife walked in, walked around, took some pictures and left.

After his arrest, Mr. Gerding spoke to the FBI voluntarily and consented to a search of his phone, providing the passcode.  To the FBI, he truthfully said maintained that he was allowed access into the building by the officers that were present.

Once inside, the Gerdings remained in public areas.  They first entered the Rotunda where Mr. Gerding noted the "rich history" of the building.  They did not enter any offices or other private areas.  They did not carry weapons.  They were not in the presence of any physical violence between rioters and police.

## ARGUMENT

### I.    Legal Standard

The Court is well aware that the Supreme Court's opinions in *Kimbrough v. United* States, 552 U.S. 84 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), have dramatically altered the law of federal sentencing.  Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a).  Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range;

(d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment.  *See* 18 U.S.C. §3553(a).

## II.   Imposing a Sentence of Probation is Sufficient, But Not Greater Than Necessary, to Comply with 18.U.S.C. §3553(a).

The Defense concurs with U.S. Probation Office's recommendation of a period of probation but contends that a period of one year is appropriate.

It is certainly true that January 6th left a stain on the Republic.  But Mr. Gerding, in the end, is a gainfully employed man with a scant criminal record who committed and took responsibility for a petty misdemeanor. Although many other Capitol rioters have falsely claimed that they were "let in," the Gerdings were able to credibly claim that this was their belief.  Still, Mr. Gerding decided to accept responsibility and saved the government from the resources it would have had to commit towards trial.

This acceptance of responsibility is important because, unlike most other federal offenses, that acceptance is not built into the calculation of his sentence. Mr. Gerding agreed to plead guilty because he is ashamed to have been a part of such a terrible day in our history.  He pleaded guilty because he recognizes the trauma that police officers experienced that day and because he knows that he

contributed, even though he had no intention of harming any officers or disrupting the certification process.  Because of his genuine remorse and his acceptance of responsibility, also demonstrated by his pretrial compliance, he should be ordered to serve a one year period of probation.

In fact, in applying the rubric cited by the U.S. Attorney's Office, it is clear that Mr. Gerding is at the low end of the spectrum for any of the prosecuted offenses.  In each of its Sentencing Memoranda, the government has forcefully argued:

> Additionally, while looking at the defendant's individual conduct, we must assess such conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment.

Applying these factors demonstrates that Mr. Gerding should receive a probationary sentence.  First, he entered the Capitol building on what appears to be an emergency exit on the west side where there was no violence.  In fact, the officers can be seen on video opening the doors and stepping aside as individuals entered. Second, Mr. Gerding encouraged no one to be violent and was not in the presence of any violence.  Third, Mr. Gerding did not encourage any property destruction.  He

was not in the presence of any property destruction.  Mr. Gerding did not destroy

any evidence – he provided his recordings and devices to law enforcement.  He spent

about eleven minutes inside the building and did not enter any sensitive areas.  The

extent of his social media activity on and after January 6th was the posting of two

photographs, one of him and his wife in front of a painting of the Declaration of

Independence in the Capitol and a second photograph of a statue with a hat resting

upon it.  Mr. Gerding cooperated with law enforcement both on and after January

6th.  He is genuinely and sincerely remorseful for his actions.

### a. Mr. Gerding's Personal History and Characteristics

Jason Gerding is a proud father of two teenagers.  He works as a systems

analyst in the informational technology field and is a self-described "computer

nerd."

Mr. Gerding has repeatedly acknowledged his wrongheaded actions on

January 6th and assures the Court that his behavior around the time is

uncharacteristic of his nature.  At the outset of the pandemic, Mr. Gerding was an

avid sports fan who spent nearly all of his free time following and watching sporting

events.  But once the pandemic began, Mr. Gerding retreated to the internet and

became exposed to conspiracy theories.  He admits (as he did to the FBI in January

2021) that he became interested in right-wing media but even then "felt it was

weird and not quite right."  To his credit, he recognized that much of social media

became a "right-sided echo chamber" but initially went down rabbit holes "because

he didn't have anything else to do."  On December 26, 2020, he tweeted his state of

mind: "So much disinformation is coming out.  I don't know what is real what is fake.  I trust the plan.  I'll be in DC Jan 6th, but my head is starting to hurt."

Mr. Gerding has a minimal criminal history and has never been associated with these sorts of activities.

### b.  Nature and Circumstances of the Offense

Although Mr. Gerding has taken responsibility for illegally entering the Capitol building, there are a number of reasons why this factor weighs in favor of a sentence short of incarceration.  Mr. Gerding had no plans to go to the Capitol until he was prompted to by the president.  He did not engage in any violence or destruction that day.   He did not bring any weapons or protective armor to the District, much less to the Capitol.  He was respectful to police officers the entire time.  He did not enter any restricted areas. Unlike those rioters prepared for battle, he came to the District with his wife and never left her side, demonstrating that his intent was only to protest.  And he did not encourage anyone to do anything. Even among those who were guilty of the parading offense, his eleven minutes lies in the far end of the spectrum in terms of culpability.  And he was one of the very few who could reasonably claim that officers stepped aside and appeared to let him inside the building.

### c.  The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate Deterrence, and the Need to Avoid Unwanted Sentencing Disparities

Based on Mr. Gerding's personal history and characteristics, it is clear that his entry on January 6, 2021 was an isolated event that was completely out

character.  It is also extremely unlikely that he will recidivate given his lack of criminal history and his perfect record on pre-trial supervision for the past two and a half years.  Any potential for recidivism can be addressed by the probationary sentence recommended by the defense and U.S. Probation.

When weighed against other cases, Mr. Gerding's conduct is more suitable for a sentence that spares him of incarceration.   The probation office's recommendation recognizes this and concludes that Mr. Gerding's conduct was, relative to others, minor.

The vast majority of individuals who have pleaded guilty to the Parading offense like Mr. Gerding has been spared incarceration.  There have been some outlier sentences for individuals who appeared to seek out offices belonging to those in Congressional leadership but, in an effort to avoid disparate sentences, judges in this District have followed the cues presented by the petty misdemeanor charge.

It is important to note that individuals allowed to plead guilty to parading include those whose conduct was significantly worse than Mr. Gerding. For example, Derek Jancart, 21-cr-148 (JEB)  and Eric Rau, 21-cr-467 (JEB) wore gas masks, had two-way radios, Kevlar-lined gloves and were posting about the lack of snipers near the Capitol.  *United States v. Derek Jancart*, 21-cr-148, ECF 25 at 13. Nichols Perretta entered after being tear gassed, stole Congressional documents and discarded them to destroy evidence.  *United States v. Nichols Perretta*, 21-cr-539 (TSC), ECF 47 at 19.  Nolan Kidd entered the building after being tear-gassed three times and shouted encouragements to rioters assaulting police.  *United States*

8

*v. Nolan Kidd*, 21-cr-249 (CRC), ECF 56 at 23.  John Lolos was in the Capitol for 43 minutes "chanting at U.S. Capitol police" and was removed from a commercial flight on his way home for disrupting the flight with chants about Trump.  *United States v. John Lolos*, 21-cr-243 (APM), ECF 32 at 2-3. Zachary Wilson, who received a probationary sentence, entered into Speaker Pelosi's office and twice lied to the FBI. *United States v. Zachary Wilson*, 21-cr-578 (APM), ECF 49 at 19.  Andrew Ericson also went entered the Speaker's suite, stole a beer and drank it with his feet on the conference table.  *United States v. Andrew Ericson*, 21-cr-506 (TNM), ECF 37 at 2.[1]

Some defendants charged even under 1752(a), the one year misdemeanor, have received sentences of straight probation.   Rachel Pert was sentenced to probation despite admitting that she was trying to "storm them to stop the vote." *United States v. Rachel Pert¸*21-cr-139 (TNM). Jeffrey Witcher was sentenced to probation despite "penetrat[ing] the Crypt portion of the U.S. Capitol, where violence between rioters and law enforcement was occurring around him" and deleting evidence from his phone, *United States v. Jeffrey Witcher¸*21-cr-235 (RC), ECF 39 at 2.  Kevin Cordon received probation despite entering the Capitol wearing body armor and a gas mask, *United States v. Kevin Cordon*, 21-cr-277 (TNM). Verden Nalley received probation despite spending 30 to 40 minutes in the Capitol and threatening to "be back with guns in two weeks", *United States v. Verden Nalleyi,* 21-cr-116 (DLF) ECF 93 at 2.  Jenny Cudd received probation despite

---

[1] The other cases relied upon by the government are either probationary sentences that support the same result here or are for charges more serious than the petty misdemeanor involved in this case.

wearing bulletproof sweatshirt, pushed against police yelling "go" and "charge,"
*United States v. Jenny Cudd*, 21-cr-68 (TNM) ECF 90 at 2.

To summarize, a probationary sentence is appropriate for Mr. Gerding because no aggravating circumstances apply here. Mr. Gerding was not in the District to stop the certification, he did not assault anyone, he did not encourage violence or property destruction, he did not witness any violence or property destruction he was not part of the initial breach, he stayed in the building for minimal time, he engaged with the officers in a friendly manner, he did not destroy evidence and he did not go to a sensitive area when he was inside a building. He has been entirely compliant on pretrial release. He is sincerely remorseful.

## **CONCLUSION**

For the reasons stated above, Mr. Gerding respectfully requests that the Court impose a period of probation and complete a period of community service. Mr. Gerding also requests that a fine not be imposed in light of his obligation to pay $500 restitution.

<div style="margin-left:40%">

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Eugene Ohm
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500
Eugene_ohm@fd.org

</div>